Small vs. Champeny.

BARDEEN, J., took no part.

SMALL, Administrator, Respondent. vs. CHAMPENY, Appellant.

*January 16 — January 31, 1899.*

(1–3) *Mental incompetency: Evidence: Adjudication: Presumption as to prior condition. (4–6) Fraud: Evidence: Admissions: Burden of proof: Instructions to jury.*

1. An adjudication of mental unsoundness *per se* is evidence only of the mental condition of the subject at the time of such adjudication, and thereafter upon the theory that a condition of mind once shown to exist is presumed to continue.

2. An instruction that an adjudication of mental unsoundness may relate back presumptively to a prior date, as evidence of the mental condition at such date, *held* error.

3. When the condition of mind of a person is shown to have been the same for a considerable period of time, an adjudication as to such condition at one date during the period is competent evidence when the act claimed to have been affected by such condition occurred at a prior date, upon the theory that it is reasonable to say that appearances determined at one time during the period to indicate insanity or incompetency, indicate the same at other times during such period, whether before or subsequent to the adjudication.

4. The admissions of an alleged defrauded party, made long after the act sought to be avoided for fraud occurred, are not admissible as evidence to affect the title to property involved.

5. The giving of an instruction on a material point, susceptible of two constructions, one that condemns it and one that does not, where the jury may have adopted either construction, is reversible error.

6. In the submission to a jury of a cause of action, predicated on circumstances which in law raise a presumption of fraud or undue influence, it is improper to say that the burden of proof is on the person charged, to disprove it. The true rule is that when circumstances are established from which, as a matter of law, a presumption of fraud or undue influence arises, then the burden of proof is on the party charged with being guilty thereof to show that he is innocent and that the alleged defrauded party acted voluntarily and of his own free will.

　　[Syllabus by MARSHALL, J.]

APPEAL from a judgment of the circuit court for Waukesha county: JAMES J. DICK, Circuit Judge. *Reversed.*

Action of replevin brought in the lifetime of William Champeny by his guardian to recover certain promissory notes claimed to have been obtained from him by the defendant by means of fraud and undue influence, before he was placed under guardianship. The guardian was appointed by reason of the old age and incompetency of Champeny to do business and take care of his property. The ward died after the action was brought. It was revived in the name of the administrator and was thereafter tried, the verdict and judgment being for the plaintiff. Defendant appealed.

For the appellant there was a brief by *D. J. Hemlock*, attorney, and *O'Connor, Hammel & Schmitz*, of counsel, and oral argument by *J. L. O'Connor* and *Mr. Hemlock*.

For the respondent there was a brief by *Ryan & Merton*, and oral argument by *E. Merton*.

MARSHALL, J. The right of plaintiff to recover depended on whether the deceased, William Champeny, was competent to transact his business at the time he parted with the property in controversy to the defendant. About four and one-half months after the transaction, there was an inquest before the county judge as to Champeny's mental condition. Such inquest was had on an application for the appointment of a guardian. As a part of the proceedings, Champeny's testimony was taken, and among other things he testified at length as to his business relations with the defendant, particularly in regard to the property in controversy in this case. The result of the inquest was that Champeny was adjudged incompetent to attend to his business affairs, and a guardian for him was accordingly appointed. The evidence of Champeny on the hearing and the adjudication which followed were, against defendant's objections, admitted as evidence for plaintiff on the trial in question, and that is assigned as error on this appeal.

The general rule is, that an adjudication as to mental soundness is direct evidence of the fact at the time of the adjudication, and presumptive evidence of the condition of the subject at a subsequent time, upon the theory that a condition of mind once shown to exist is presumed to continue. It is not evidence of itself of the mental soundness of the subject at any time prior to the adjudication. In the absence of independent evidence showing that the same condition of mind existed at the prior time as at the time of the adjudication and had been continuous in the meantime, it is not admissible at all in a controversy as to such condition

Small vs. Champeny.

at such prior time. That is the state of the law as laid down in previous adjudications of this court, and no reason is perceived for departing from it. Such is the law also according to standard text writers and courts generally.

It is often said, as in *Burnham v. Mitchell*, 34 Wis. 117, that an adjudication of insanity is not evidence of the condition of the person to whom it relates prior to its date. That is perfectly consistent with what has been said. True, it is said in *Giles v. Hodge*, 74 Wis. 360, that the result of the adjudication in *Burnham v. Mitchell* was introduced to prove mental capacity reaching back many years, but the court did not say, certainly did not intend to say, that such evidence was proper *per se*. The admission of the evidence there was held not prejudicial because the court, by the charge, expressly limited its effect to the time when the adjudication was made. The evidence was likewise limited in *Giles v. Hodge*, the court saying, in substance, that the adjudication, though some days after the filing of the petition, was expressly of the date of the petition, and on such date the deeds were made, the validity of which was challenged because of the incompetency of Giles to make them. The court said there is no doubt of the general principle that the adjudication cannot relate back to a prior time as evidence of incapacity, *but when it is shown that the mental condition had been the same for a considerable length of time and was the same at the time of the act to be affected by it as when the adjudication was had,* the adjudication is competent evidence. Although that was not strictly necessary to the decision of the case, because, as indicated, the court held that the adjudication, by its terms, included the very day on which the act affected by the alleged insanity took place, yet on the theory of the party challenging the competency of the adjudication as evidence, that is, that the transaction which was the subject of controversy took place a few days prior to such adjudication, the admissibility of it in connection

with other evidence was a proper subject for discussion and decision. So what was said in that line must be considered the correct rule of law according to the deliberate judgment of this court then expressed, till some *contra* declaration shall have been made, and no reason is perceived now for departing from that rule. As before stated, however, that does not militate at all against the principle that such an adjudication, of itself, is not evidence of the condition of the party affected by it at any prior time. It tends that way only when the condition of the person is shown to have been the same for a considerable period of time, including the prior date and the adjudication. Then a decree of mental incompetency at one date during the period is evidence tending to show that the circumstances which indicated insanity at one time indicated the same at other times during such period. That appeals to our reason and common sense as to what ought to be the law, and the decisions of courts elsewhere support it, as indicated in the citations found in the opinion in *Giles v. Hodge, supra.*

In *Ashcraft v. De Armond*, 44 Iowa, 229, the mental condition of the subject was shown for a period of many years, reaching to a time long after the act claimed to have been affected by it, all tending to show gradual mental decay, reaching, finally, total inability for mental action. Under those circumstances the court held that evidence of the mental condition after the act complained of, in connection with all the other evidence on the subject, was proper. Again, in *Terry v. Buffington*, 11 Ga. 342, the act called in question was the making of a will in 1844. Evidence was produced tending to show that the testator's mental condition was the same before that time and continuously down to 1849. In that state of the case expert evidence was held proper to show that the testator was incompetent at the latter date, 1849. " *Per se*," said the court, " the proof was objectionable; taken in connection with the other evidence

it was relevant and proper." Keeping in mind the distinction between an adjudication of mental unsoundness as evidence, unsupported by evidence of prior mental condition, where that is the real subject of controversy, and such evidence in connection with other evidence showing that the prior condition and appearances of mental unsoundness were the same as at the time of the adjudication, it will readily be seen that all the cases holding that such an adjudication is not evidence of mental condition at a prior time are in perfect harmony with the rule we say was announced by this court in *Giles v. Hodge*, and which is now affirmed. But, as said in *Terry v. Buffington*, the converse of the rule that insanity once judicially established is presumed to continue, is not the law. That is, it does not relate back as well as continue. In the language very properly used by the learned counsel for appellant on the argument, the presumption springing from the adjudication is not retroactive.

In view of what has preceded, it must be held that the admission in evidence of the adjudication made over four months after the act sought to be impeached, was error. There was no competent proof, as appears, warranting the finding that Champeny was in substantially the same condition of mind continuously from before the transfer of the property to defendant, down to the time he was placed under guardianship. That being the necessary foundation for the admission of the adjudication, and it being absent, the error of the trial court is clear. We shall not take time to go through the evidence in detail to demonstrate want of the necessary preliminary proof, but rest the matter with stating our conclusion that it is not in the record. Probably, if the trial judge looked at the matter from a correct legal standpoint, the evidence of the deceased taken before the county judge was deemed to be sufficient, with the other evidence, to pave the way for the admission of the appointment of the guardian. But the evidence of Champeny was

clearly incompetent.   The learned circuit judge said that it
was admitted as admissions of Champeny, overlooking the
well-known rule that the admissions of a vendor or trans-
ferrer of property, subsequently made, are not admissible
in evidence to affect the vendee's or transferee's title.   That
principle is elementary.   *Grant v. Lewis*, 14 Wis. 487; *Selsby
v. Redlon*, 19 Wis. 17.   No good reason has been or can be
suggested to uphold the admission of that testimony.   Its
admission alone necessitates a reversal of the judgment.

The court gave to the jury quite a long, involved instruc-
tion as to the effect, as evidence, of the appointment of the
guardian.   The instruction is too long to admit including it
*verbatim* in this opinion.   Suffice it to say that the jury may
well have understood from the judge's language, and prob-
ably did understand, that they were at liberty to presume
from the adjudication that the incompetency thus found re-
lated back by way of inference four months and a half to the
time when the act alleged to have been affected by mental
unsoundness occurred.   "It is the general rule," said the
court, "that such an adjudication cannot relate back to a
prior time as evidence of incapacity at such prior time, *except
by a presumption that it continued.*"   That is a pretty clear
indication that the learned court entertained the idea that
an adjudication of incompetency as independent evidence is
competent, by relation, to establish mental unsoundness at
a prior date.   True, there is other language in the charge,
indicating a view that if there was evidence of a condition
of mental decay which existed for a considerable length of
time, reaching down to and including the date of the adju-
dication, such adjudication might be considered as evidence
in connection with the other evidence of the mental condi-
tion of Champeny at a date prior to such adjudication, and
within the period covered by such evidence of prior condi-
tion.   But that was not said in such a way but that a pro-
fessional man, even, might easily have understood that the

adjudication itself would relate back, presumptively. If we could say the charge admits of a construction in accordance with correct legal principles, it must yet be deemed prejudicial, so long as we must say it also admits of a contrary meaning and the jury were quite liable to have been misled thereby. *Gibbons v. W. V. R. Co.* 62 Wis. 546; *Hopkins v. Rush River*, 70 Wis. 10; *West v. Wells*, 54 Wis. 525.

The court instructed the jury, in substance, that in this class of cases the general rule, that the burden of proof is on the party alleging fraud to establish it by a preponderance of evidence, does not apply; but on the contrary the burden of proof is on the party charged with fraud and undue influence to disprove it. That was not strictly accurate, though it must be conceded there are many cases that would seem to support it, to one not thoroughly conversant with the doctrine upon which they rest. The true rule is that in this class of cases, the same as in others, the burden of proof is on the party alleging fraud to establish it by a preponderance of the evidence to the satisfaction of the jury; but proof of circumstances which, in law, satisfactorily suggest fraud does the work, and then the burden of proof is upon the party against whom fraud is alleged to meet the *prima facie* case thus made, by affirmatively and satisfactorily explaining such circumstances and establishing his innocence. The facts from which fraud and undue influence are *prima facie* inferable are mentioned in numerous cases in this court, the following being among the most significant: *Smith v. Smith*, 60 Wis. 329; *Davis v. Dean*, 66 Wis. 100; *Cole v. Getzinger*, 96 Wis. 559; *Disch v. Timm*, 101 Wis. 179; *Doyle v. Welch*, 100 Wis. 24.

In *Davis v. Dean*, this language was used: "If the burden of proof is upon the plaintiffs to show such fraud or undue influence, probably we could not disturb the findings of the circuit court which negative their existence. But *under the circumstances of this case the burden of proof is not*

Small vs. Champeny.

*upon the plaintiffs."* The significance of the language,
" under the circumstances of this case," is liable to be over-
looked, as it undoubtedly was by the learned circuit judge.
In connection with that part of the opinion in *Davis v. Dean,*
just quoted, is a statement of the circumstances mentioned
which it was said presumptively made the case for the plaint-
iffs and placed the defendant in the position indicated in
the quoted language.   In *Disch v. Timm,* the present chief
justice, quoting with approval from a late New York case,
said: "When opportunity and a disposition to influence
the act of another improperly are shown, a presumption of
undue influence arises, and the burden of proof is *then on
the party charged therewith to show that such other acted in-
telligently and voluntarily."* To the same effect the court,
by Mr. Justice WINSLOW, in *Doyle v. Welch,* said: "*When a
voluntary conveyance is made by an aged person of his entire
property without consideration, to one who stands in a position
of trust and confidence to him, under circumstances of secrecy,*
the burden of proof is upon the grantee to show that the
conveyance was untainted with undue influence."

Such is the effect of all the authorities on the subject.
The field for the operation of undue influence or fraud being
shown, together with satisfactory indications that the oper-
ation has taken place, then from that situation springs the
presumption of fact which the person charged with the
wrong doing must meet and overcome by showing affirm-
atively that there was no wrong.   A presumption against
the person charged does not exist from the mere fact that
there is such a charge, but because of circumstances appear-
ing which satisfactorily suggest the wrong, and it is not till
such circumstances appear that it can properly be said the
burden of proof to disprove wrong is on the person charged.

A jury may properly be told, in such an action, that the
burden to establish fraud or undue influence is upon the
plaintiff, but that it need not be, and usually is not, estab-

lished by direct evidence, but by inference from circumstances pointing that way, which circumstances must be affirmatively established as part of plaintiff's case. Their attention may be properly called to the circumstances which in law raise the presumption of fraud and undue influence, and if such circumstances appear uncontroverted by the evidence, they may, and should, be told that the plaintiff's case is thereby *prima facie* established. If the circumstances are controverted, the jury should be told that they must find the facts in that regard from the evidence, the burden of proof to satisfy them by a preponderence of evidence being upon the party charged. The facts being uncontroverted, or found by the jury from the evidence, *prima facie* showing fraud or undue influence as a matter of law, the jury should be told to find against the party charged therewith unless satisfied from the whole evidence in the case that the act called in question was the free, voluntary, and deliberate act of the alleged defrauded party, the burden of proof being upon such party.

For the several errors indicated, the judgment must be reversed and the cause remanded for a new trial.

